INCH MEMORIALS v CITY OF PONTIAC

Docket No. 78-2993. Submitted April 4, 1979, at Detroit.—Decided November 6, 1979. Leave to appeal applied for.

Plaintiffs, Inch Memorials (a Michigan copartnership) and Michigan Division Monument Builders of North America, Inc., filed suit in the Oakland Circuit Court to prohibit defendant, City of Pontiac, from selling grave markers and memorials for use in its municipal cemeteries in competition with plaintiff Inch and others. Plaintiffs alleged that the sales were beyond the authority of the municipality and that, by failing to charge the four percent sales tax, defendant was engaging in unfair price discrimination resulting in the establishment of an illegal monopoly under the fair trade act. The court, Richard D. Kuhn, J., held that the authority to sell grave markers was implicit within the municipal authority to own and operate cemeteries and that the sales did not constitute unfair competition and denied the request for injunctive relief. Plaintiffs appeal. *Held:*

1. The provisions of the home rule cities act must be liberally construed in favor of municipalities. The Legislature's grant of authority to municipalities to acquire, maintain, develop and operate cemeteries and to provide for the cost and expenses thereof should be interpreted to give a home rule city the power to sell grave markers in its own cemeteries.

2. The fair trade act has no application to a municipality which, as an adjunct to its maintenance of a cemetery, sold grave markers without charging sales tax where: 1) there is no evidence of the municipality "combining" with another person in restraint of trade; and, 2) the buyers are not in competition

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 14 Am Jur, 2d Cemeteries §§ 3, 5.
   56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 126 *et seq.*
[2, 4] 32 Am Jur 2d, Fair Trade Laws §§ 9, 13.
   68 Am Jur 2d, Sales and Use Taxes §§ 43, 118.
[3] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 193-195.
[4] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 212.

with one another. The four percent differential produced by the nonpayment of sales tax is not so unreasonably great as to render the competition with private sellers unfair.

Affirmed.

MacKenzie, J., dissented. She would hold that the powers of municipal corporations are those 1) granted in express terms, 2) reasonably or fairly implied in or incident to the powers expressly granted, or 3) essential to the accomplishment of the declared objects and purposes of the corporation. Any fair, reasonable or substantial doubt concerning the existence of a power is to be resolved against the corporation. A municipality should not encroach upon the field of private enterprise where the articles provided are not of public necessity and are available from private enterprise. She would reverse.

## OPINION OF THE COURT

1. MUNICIPAL CORPORATIONS — CEMETERIES — SALE OF GRAVE MARKERS.

    The provisions of the home rule cities act must be liberally construed in favor of municipalities; the Legislature's grant of authority to municipalities to acquire, maintain, develop and operate cemeteries and to provide for the cost and expenses thereof should be interpreted to give a home rule city the power to sell grave markers for its own cemeteries (MCL 117.1 *et seq.;* MSA 5.2071 *et seq.).*

2. MUNICIPAL CORPORATIONS — CEMETERIES — SALE OF GRAVE MARKERS — STATUTES.

    The fair trade act has no application to a municipality which, as an adjunct to its maintenance of a cemetery, sells grave markers without charging sales tax where: 1) there is no evidence of the municipality "combining" with another person in restraint of trade; and, 2) the buyers are not in competition with one another; the four percent differential produced by the nonpayment of sales tax is not so unreasonably great as to render the competition with private sellers unfair (MCL 445.701 *et seq.;* MSA 28.31 *et seq.).*

## DISSENT BY MacKenzie, J.

3. MUNICIPAL CORPORATIONS — POWERS OF MUNICIPAL CORPORATIONS.

    *The powers of municipal corporations are those 1) granted in express terms, 2) necessarily or fairly implied in or incident to the powers expressly granted, or 3) essential to the accomplishment of the declared objects and purposes of the corporation;*

*and fair, reasonable or substantial doubt concerning the existence of a power is to be resolved against the corporation.*

4. MUNICIPAL CORPORATIONS — MUNICIPAL SALES — PUBLIC USE.

The private sellers of grave markers who are capable of meeting the demand for markers meeting the specifications for placement in a municipal cemetery are entitled to be free from municipal competition; a municipality should not encroach upon the field of private enterprise where the articles provided are not of public necessity and are available from private enterprise.

*Bebout, Potere, Cox, Hughes & Cadieux,* for plaintiffs.

*Rudy J. Nichols,* for defendant.

Before: T. M. BURNS, P.J., and M. F. CAVANAGH and MACKENZIE, JJ.

PER CURIAM. Plaintiffs appeal of right a lower court judgment denying them injunctive relief prohibiting defendant from selling grave markers and memorials for use in its own municipal cemeteries. We affirm.

Under the Michigan Constitution a municipal corporation may "acquire, own, establish and maintain" public cemeteries. Const 1963, art 7, § 23. This constitutional authority is not self-executing but requires enabling legislation. *Wayne Village President v Wayne Village Clerk,* 323 Mich 592; 36 NW2d 157; 8 ALR2d 357 (1949). The necessary statutory authority giving defendant the right to maintain its public cemeteries is found in the home rule cities act. MCL 117.1 *et seq.;* MSA 5.2071 *et seq.* In pertinent part, that act states that home rule cities may provide in their charters for the acquisition and operation of cemeteries and for the costs and expenses thereof. MCL 117.4e; MSA 5.2078.

In general, the powers that cities possess fall into three categories: those granted in express words; those necessarily or fairly implied in or incident to the powers expressly granted; and those essential to the accomplishment of the declared objects and purposes of the municipal corporation. *Home Owners' Loan Corp v Detroit,* 292 Mich 511; 290 NW 888 (1940), *Toebe v City of Munising,* 282 Mich 1; 275 NW 744 (1937). The power that defendant seeks in this case can be fairly implied from its authority to acquire, maintain, develop and operate its cemeteries and from its authority to provide for the costs and expenses thereof. We find this result supported by several considerations.

First, in accordance with the constitution, Const 1963, art 7, § 34, and with case law, *1426 Woodward Avenue Corp v Wolff,* 312 Mich 352, 369; 20 NW2d 217 (1945), the provisions of the home rule cities act must be liberally construed in favor of municipalities. In light of this requirement, the Legislature's grant of authority to municipalities to acquire, maintain, develop and operate cemeteries and to provide for the costs and expenses thereof should be interpreted to give defendant the power to sell grave markers in its own cemeteries. *Cf. McIntosh v City of Muskegon,* 88 Mich App 30; 276 NW2d 510 (1979).

We also note that the primary reason that defendant sells grave markers is to help finance its cemetery operations. In *Wetherby v City of Jackson,* 264 Mich 146, 151; 249 NW 484 (1933), the Supreme Court stated that such a reason would support an otherwise valid municipal regulation of a cemetery:

"The rule prohibiting the erection of the tents of

private funeral directors for use at funerals and compelling the use of the tents of the city or of the cemetery board is a condition attached to the exercise of the right of burial, and may be justified under the police power which has to consider rights of other lot owners and those where burial is to take place, *and may be justified upon the ground of public revenue for the care, support, and maintenance and ornamentation of the cemetery itself.*" (Emphasis supplied)

In sum, we hold that the power to sell grave markers is reasonably related to the authority given defendant over its cemeteries.

Plaintiffs also argue that by failing to charge sales tax on the monuments that it sells, defendant has engaged in unfair price discrimination resulting in the establishment of an illegal monopoly under the fair trade act, MCL 445.701 *et seq.;* MSA 28.31 *et seq.* We find this argument unpersuasive.

The fair trade act has no application to the instant case. There is no evidence that defendant has engaged in an illegal "combination" with another person in restraint of trade. MCL 445.701; MSA 28.31. Further, because defendant's buyers are not in competition with one another, defendant cannot be said to have unfairly bestowed a competitive advantage upon one of its buyers to the disadvantage of that buyer's competitors. Finally, the 4% differential produced by the nonpayment of sales tax is not so unreasonably great as to render defendant's competition unfair and there is no evidence that defendant ever entertained the intent to "destroy" or "eliminate" private monument dealers in Pontiac.

Affirmed. No costs, a public question being involved.

MACKENZIE, J. *(dissenting).* I dissent. I am unable to conclude that the power to sell grave markers and memorials can be fairly implied from the authority to operate cemeteries. As noted by the majority, the power of municipalities fall into three separate categories: those granted in express words; those necessarily or fairly implied in or incident to the powers expressly granted; and, those essential to the accomplishment of the declared objects and purposes of the corporation. These categories were set forth in *Toebe v City of Munising,* 282 Mich 1, 15-16; 275 NW 744 (1937), which further stated that any fair, reasonable or substantial doubt concerning the existence of a power is resolved against the corporation, and the power is denied.

According to commentator McQuillin:

"The object of the creation of a municipal corporation is that it may perform certain local public functions as a subordinate branch of the state government; and, while it is invested with full power to do everything necessarily incident to a proper discharge thereof, no right to do more can ever be implied. In the absence of express legislative sanction, it has no authority to engage in any independent business enterprise or occupation such as is usually pursued by private individuals." 12 McQuillin, Municipal Corporations (3d ed), § 36.02, p 502.

The principle that a party engaging in legitimate private business is entitled to be free from unauthorized proprietary business activity of a municipality has been adhered to by prior decisions in this state. In *Toebe v City of Munising, supra,* the Michigan Supreme Court held that the plaintiff was entitled to sell coal to a community free from municipal competition, despite the fact that the city had been the sole distributor of coal to the

public for several years preceding the plaintiff's entry into the field. The Court indicated that the selling of coal could not fairly be implied in a constitutional provision empowering cities to acquire, own, and operate "public utilities for supplying water, light, heat, power, and transportation". The Court stated that a different situation existed where there was an emergency and the city had to provide fuel to prevent general suffering. In the case confronting it, however, an overruling public necessity did not exist justifying the private venture. See also *Baker v City of Grand Rapids,* 142 Mich 687; 106 NW 208 (1906), *Attorney General v City Council of the City of Detroit,* 150 Mich 310; 113 NW 1107 (1907).

Plaintiff Inch has sold monuments in Pontiac for approximately 80 years. It and its competitors in the private sector are apparently capable of selling an unlimited number of stones conforming to city regulations. There was no sign that, absent municipal participation, the public desire or need for monuments could not be met. The city's late entry into the business indicates that the need was traditionally met by private suppliers.

The issue facing us was encountered by the Maine Supreme Court in *Morrison v City of Portland,* 286 A2d 334 (Me, 1972). The defendant municipality sold markers ostensibly under the authority of a Maine statute which provided:

"A municipality may raise or appropriate money:

\* \* \*

3. Cemeteries. Providing for public cemeteries; maintaining private cemeteries established before 1880; caring for graves of veterans and maintaining fences around cemeteries in which veterans are buried." 30 Me Rev Stat Ann 5103.

The Court held that the selling of grave markers could not be viewed as necessarily or reasonably incidental to the operation or maintenance of a cemetery by a municipality.

The Morrison Court employed a test set forth in *Laughlin v City of Portland,* 111 Me 486, 499; 90 A 318 (1914), for determining what constitutes a public use when municipal sales are involved:

> "Its two tests are: first, the subject matter, or commodity, must be one 'of public necessity, convenience or welfare.' * * * The second test is the difficulty which individuals have in providing it for themselves. The causes creating the difficulty may vary, but if the difficulty exists, the test is met."

The Court concluded that the markers were not a public necessity and they were readily obtainable from private businesses. This is equally true of the markers and memorials sold by the plaintiff in the instant case. Unlike fuel, food, or housing, the markers do not constitute an important public need. Further, there is no indication that the public need for monuments could not be met by plaintiff and its competitors in the private sector.

Although provisions in the home rule cities act are to be liberally construed, *City Comm of Jackson v Hirschman,* 253 Mich 596, 599; 235 NW 265 (1931), a construction in the instant case in favor of the commercial activity by the defendant is outweighed by the principle that a municipality should not encroach upon the field of private enterprise where the articles provided are not of public necessity and are available from private enterprise.

Finally, the Michigan Supreme Court decision in *Wetherby v City of Jackson,* 264 Mich 146; 249 NW 484 (1933), does not mandate a different re-

sult. In that case, the city had a regulation that completely prohibited the erection of tents of private funeral directors for use at funerals conducted at municipal cemeteries. That case did not involve a municipality competing in the field of private enterprise with private businesses. The ordinance permitting exclusive use of city tents was justified in large measure by the city's inherent police power to protect the rights of the other lot owners.

I would reverse.